UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**KAREN GLYNN**                                                                                      **CIVIL ACTION**

**VERSUS**                                                                                                 **NO. 16-18-RLB**

**COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION**

---

### RULING AND ORDER DISMISSING SOCIAL SECURITY APPEAL

---

Karen Glynn (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. § 405(g), denying Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-4), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

**I.      PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income originally alleging that she became disabled on September 30, 2010[1] because of Lupus,

---

[1] In a brief filed before the Appeals Council in support of her request for review, Plaintiff asked that her alleged onset date be amended to August 29, 2013. (Tr. 237).

Depression and Sjogren's Disease. (Tr. 87). Plaintiff's applications were eventually denied by an Administrative Law Judge (ALJ), who first held an administrative hearing (Tr. 37-75) before issuing an unfavorable decision on July 24, 2014. (Tr. 19-32). Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 19, 2015. (Tr. 1-7). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.,*

*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of

sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.

2. Plaintiff had not engaged in substantial gainful activity since September 30, 2010.

3. Plaintiff suffered from the following severe impairments: Systemic Lupus Erythma (SLE) and Sjogren's Disease, since September 30, 2010; Sciatica, since February 25, 2013; and Depression/Generalized Anxiety Disorder, since August 29, 2013.

4. Plaintiff did not meet or medically equal any listed impairment.

5. Plaintiff retained the residual functional capacity (RFC) to perform light work with certain limitations. Relevant here, Plaintiff's mental impairments limited her to either unskilled or semi-skilled work and frequent, but not constant, interaction with others.

6. Plaintiff was capable of performing her past relevant work as a General Office Clerk, File Clerk or Data Entry Clerk.

7. Plaintiff was not disabled under the Act between September 30, 2010 and July 24, 2014.

(Tr. 19-31).

## IV.   DISCUSSION

### A.   Duty to Fully and Fairly Develop the Record

Plaintiff first argues that because the ALJ failed to fully develop the record, she erroneously rejected the September 2013 opinion of her treating source, Dr. Karen Stone, as not "reflect[ive]" of Plaintiff's mental condition "for a period of 12 months or more." (Tr. 30). The ALJ pointed out that the only subsequent medical evidence from Dr. Stone indicated that Plaintiff's mental health was already improving with treatment by December of 2013. (Tr. 30). According to Plaintiff, the ALJ had 6 months between the hearing and her decision "during which time she neglected" her duty to "fully and fairly develop" the record by "secur[ing] any of [Dr. Stone's] [more recent] treatment notes." (R. Doc. 12-1 at 10). "Had [the ALJ] fulfilled her duty to secure and consider this evidence," Plaintiff suggests, "a different decision might have been reached." (R. Doc. 12-1 at 10).

It is well established "that due to the nature of administrative hearings under the Social Security Act, the ALJ has a special responsibility to develop a full and fair record upon which to base his decision." *Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981). Plaintiff interprets this duty as one requiring the ALJ to obtain all of her medical records on an ongoing basis, while at the same time relieving her of any obligation to provide those records. This interpretation is misguided.

To begin, the ALJ's duty in no way requires that he or she "obtain all of a claimant's medical records before reaching a decision." *Sun v. Colvin*, 793 F.3d at 509 (5th Cir. 2015). Indeed, the responsibility "for securing evidence of [and actually establishing] disability . . . is clearly on the claimant" at all times throughout the administrative process. *Thorton*, 663 F.2d at 1316. And any duty imposed on the ALJ does not negate the claimant's ultimate responsibility

to provide medical and other evidence of disability. Indeed, the ALJ asked Plaintiff's attorney at the hearing whether he anticipated providing any additional medical records following the hearing. (Tr. 41). Plaintiff's counsel responded in the negative and confirmed that he considered the record before the ALJ to be complete. (Tr. 41).

Plaintiff offers no explanation for her counsel's response to the ALJ or her position that the ALJ should have requested evidence that she was unaware of, especially after being told by counsel that he did not anticipate supplementing the record with new evidence. Unlike the ALJ, Plaintiff knew these treatment notes existed and were not part of the record before the ALJ, yet she made no effort to provide them prior to the July 2014 decision. As such, the lack of updated medical evidence that Plaintiff complains of "is a direct result" of her own inaction and "not any error made by the ALJ." *McKim v. Colvin*, 2014 WL 4161782, at *4 (M.D. La. Aug. 19, 2014) (ALJ would not be blamed for lack of supporting medical records where claimant clearly failed to fulfill obligation to provide evidence of disability).

Finally, even if the Court accepted Plaintiff's argument and found that the ALJ had erred, remand would only be warranted if Plaintiff could show it resulted in prejudice. *See Sun*, 793 F.3d at 509. As discussed below, Dr. Stone's more recent treatment notes, which were eventually made part of the record by the Appeals Council, do not "cast doubt" on the existence of substantial evidence, as Plaintiff suggests.

**B.     New Evidence before the Appeals Council**

Dr. Stone's more recent treatment notes — the same ones Plaintiff argues should have been obtained by the ALJ — were provided by Plaintiff to the Appeals Council. (Tr. 5-6, 237-41, 418-33). Those treatment notes pre-dating[2] the ALJ's decision — Dr. Karen Stone's February

---

[2] The remaining additional evidence submitted by Plaintiff post-dated the ALJ's July 24, 2014 decision—Dr. Stone's September 24, 2015 medical source statement and treatment notes from July 31, 2014 and August 25, 2014.

19, 2014 – June 13, 2014 treatment notes — were made part of the record by the Appeals Council (Tr. 5-6, 418-33) before denying Plaintiff's request for review and must therefore be considered by the Court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). On appeal, Plaintiff claims that this new evidence "casts doubt" on the existence of substantial evidence supporting the ALJ's decision to reject Dr. Stone's September 25, 2013 opinion. For the reasons given below, the Court disagrees.

In determining Plaintiff's RFC, the ALJ thoroughly discussed the record evidence, including Dr. Stone's September 25, 2013 medical source statement concerning the severity of and limitations imposed by Plaintiff's depression. (Tr. 29, 291-295). In her medical source statement, Dr. Stone described depressive symptoms of isolation, fatigue and decreased concentration that were severe enough to prevent Plaintiff from completing "a normal workday and workweek without interruptions from psychologically based symptoms." (Tr. 293-94). Dr. Stone examined Plaintiff only once, on August 29, 2013, before rendering this opinion. (Tr. 291, 405-11). Dr. Stone's only remaining treatment note before the ALJ was dated December 17, 2013 — just 3 months after her September 2013 opinion. (Tr. 398-402). At that time, less than 4

---

This evidence was neither considered by the Appeals Council nor added to the record as it was "about a later time." (Tr. 2). Plaintiff has attached this evidence to her Memorandum filed with the Court (R. Doc. 12-2) and argues that the Appeals Council erred when it "summarily sloughed this evidence off as 'about a later time.'" (R. Doc. 12-1 at 11); (Tr. 2). Plaintiff now asks the Court to consider this evidence along with the administrative record in determining whether substantial evidence supports the ALJ's decision. To begin, the Court cannot consider evidence outside of the administrative transcript when determining whether substantial evidence exists. *See Parks v. Harris*, 614 F.2d 83, 84 (5th Cir. 1980). To the extent Plaintiff claims that remand is otherwise warranted because the Appeals Council erred in excluding this evidence, that argument likewise fails as the Appeals Council must only consider evidence relating to the period on or before the ALJ's decision. 20 C.F.R. § 404.970(b). This evidence does not relate to the period at issue — none of the treatment notes specifically refer to the status of Plaintiff's mental condition on or before the date of the ALJ's decision or otherwise indicate that Plaintiff's condition has not changed since some previous visit that took place during the relevant period. (R. Doc. 12-2). Specifically, the July 31, 2014 treatment notes report an improvement in Plaintiff's condition since her last visit (which took place prior to the ALJ's decision), and the August 2014 notes indicate a recent decline in her mental health since July 31, 2014. (R. Doc. 12-2 at 2-7). Moreover, the September 2015 medical source statement only makes reference to Plaintiff's "current state of depression." (R. Doc. 12-2 at 9). As such, this evidence was properly excluded by the Appeals Council.

months after she began treating Plaintiff, Dr. Stone reported a "partial treatment response" and an improvement in Plaintiff's symptoms of depression —"They are better in that they have lessened" and "[t]here has been an improvement in Karen's sociability." (Tr. 398). Plaintiff reported "doing better" when taking the medications previously prescribed by Dr. Stone during her first visit on August 29, 2013. (Tr. 399). Dr. Stone described Plaintiff as "attentive" and "fully communicative" during her December 2013 examination and did not observe any "signs" of "attentional difficulties." (Tr. 399).

The ALJ gave little weight to Dr. Stone's September 2013 opinion because it was not consistent with Dr. Stone's subsequent treatment notes from December 2013 indicating improvement, or her objective findings on examination. (Tr. 30). Moreover, considering the short length of Dr. Stone's treatment — beginning on August 29, 2013 — and the improvement already observed during the December 2013 examination that immediately followed her September opinion, the ALJ found Dr. Stone's opinion did "not reflect the claimant's mental status for a period of 12 continuous months or more." (Tr. 30).

On Appeal, Plaintiff argues that the ALJ erred by giving "little weight" to Dr. Stone's opinion "predicated on supposed improvement based on one follow-up and due to the fact that the opinion failed to account for Plaintiff's impairment over 12 consecutive months." (R. Doc. 12-1 at 9). According to Plaintiff, the treatment notes made part of the record by the Appeals Council "satisfied duration" and contradicted improvement by "document[ing] ongoing chronic and severe depressive symptoms." This new evidence, Plaintiff suggests, "casts doubt" on the ALJ's weighing of Dr. Stone's opinion and warrants remand. The Court disagrees.

First, although ignored by Plaintiff, the ALJ appropriately discredited Dr. Stone's opinion as inconsistent with her objective findings on examination. (Tr. 30). In her September 2013

opinion, Dr. Stone suggested that Plaintiff's depression caused decreased concentration that was severe enough to prevent her from completing "a normal workday and workweek without interruptions from psychologically based symptoms." (Tr. 293-94). Plaintiff's inability to concentrate likewise rendered her "unable" to "deal with normal work stress" or even "make simple work-related decisions." (Tr. 293). Beyond that, Dr. Stone found that it "seriously" affected her ability to "understand . . . remember [and] . . . carry out . . . very short and simple instructions"; "maintain attention for two hour segments"; and "work in coordination with or proximity to others without being unduly distracted." (Tr. 293-94).

But despite finding Plaintiff would be "unduly distracted" by working in close proximity to others, Dr. Stone inconsistently failed to select "easily distracted" from the list of "signs and symptoms" on the standard form she completed to render her September 2013 opinion. (Tr. 292, 293-94). Dr. Stone likewise described Plaintiff as "attentive" and observed "no signs of . . . attentional abnormalities" on examination in December of 2013. (Tr. 399).

In her September opinion, Dr. Stone further suggested Plaintiff's ability to remember even "simple" instructions was "seriously" limited and that her depression resulted in a "loss of intellectual ability of 15 IQ points or more." (Tr. 292-93). Absent from the record however are any IQ tests administered by Dr. Stone that might support a 15-point drop in Plaintiff's IQ. Even putting aside that issue, Dr. Stone's opinion is contradicted by objective findings she made in December of 2013. Specifically, Dr. Stone determined that Plaintiff's "vocabulary and fund of knowledge indicate[d] cognitive functioning in the normal range." (Tr. 399). During that same visit, Plaintiff had "no difficulty naming objects or repeating phrases," her "cognitive functioning and fund of knowledge [were] intact and age appropriate," and her "thinking [was] logical, and thought content appear[ed] appropriate." (Tr. 399). Therefore, the record before the ALJ

supports her decision to give "little weight" to Dr. Stone's opinion as unsupported by her own objective findings.

The Court does not accept Plaintiff's suggestion that any new evidence casts doubt on the ALJ's decision. Rather, the new evidence (Tr. 418-33) also provides substantial evidence in support of the ALJ's finding. On February 19, 2014, Dr. Stone reported that Plaintiff's short and long term memory, "ability to do abstract and arithmetic calculations," "cognitive functioning and fund of knowledge [were] intact." (Tr. 432). Plaintiff exhibited no signs of "attentional difficulties" and was attentive and fully cooperative throughout the exam. (Tr. 432). Plaintiff's "depressive symptoms are absent or well managed." (Tr. 432). On March 26, 2014, Dr. Stone made the same observations, but additionally noted that Plaintiff's "vocabulary and fund of knowledge indicate[d] cognitive functioning in the normal range." (Tr. 430). The same findings were all made again by Dr. Stone during both her April 11, 2014 and June 12, 2014 examinations of Plaintiff, notwithstanding Plaintiff's subjective reports regarding her depressive symptoms. (Tr. 418, 424). As such, the record both before the ALJ and the Appeals Council supports the ALJ's decision to give "little weight" to Dr. Stone's opinion because it was inconsistent with her own treatment notes. (Tr. 30). While this reason alone constitutes substantial evidence for the weight given to Dr. Stone, the Court will nonetheless consider the ALJ's remaining reasons challenged by Plaintiff.

The ALJ's finding that Dr. Stone's September 2013 opinion did not account for Plaintiff's condition over a period of at least 12 months is supported by substantial evidence, as Dr. Stone's December 2013 exam notes indicated an improvement in Plaintiff's condition since September. Just 3 months after rendering her opinion, Dr. Stone reported a "partial treatment response" and an improvement in Plaintiff's symptoms of depression in December of 2013 —

"[symptoms] are better in that they have lessened" and "[t]here has been an improvement in Karen's sociability." (Tr. 398). Plaintiff reported "doing better when she was on her medication as [prescribed]." (Tr. 399). Dr. Stone described Plaintiff as "attentive" and "fully communicative" during examination and did not observe any "signs" of "attentional difficulties." (Tr. 399). The ALJ correctly relied on this improvement in discounting Dr. Stone's opinion as not indicative of Plaintiff's condition for a period of 12 months or more. Indeed, at the time Dr. Stone's opinion was rendered, she had only been treating Plaintiff for a month and had only examined Plaintiff on one occasion. (Tr. 295, 405-11). Moreover, when the standard form on which she gave her September 2013 opinion asked Dr. Stone to predict how often Plaintiff might be absent from work, she responded: "I do not have enough information to answer this question in regards to the depression . . . ." (Tr. 295).

Beyond that, the additional treatment records before the Appeals Council show an improvement in Plaintiff's condition when compared to the extreme limitations opined by Dr. Stone in September of 2013. In addition to the objective findings mentioned above concerning Plaintiff's attention and cognitive functioning, Plaintiff reported fewer symptoms of irritability on March 26, 2014. (Tr. 430). In a treatment plan completed that same day, Plaintiff was "motivated for treatment" and her "long-term goal" was to "improve sufficiently to function in a usual setting with few or no symptoms of depression" by September 26, 2014 — within 12 months of Dr. Stone's September 2013 opinion. (Tr. 428). By April 11, 2014, Plaintiff reported that her symptoms of depression had "lessened" in frequency and intensity and that "she [was] less sad." (Tr. 424). Moreover, "no signs of anxiety" were observed during examination. (Tr. 424). Although Plaintiff reported an increase in depressive symptoms in June of 2014, her anger was described as now being "well controlled." (Tr. 418).

The treatment notes considered by the Appeals Council certainly show that Plaintiff continued to exhibit some degree of depressive symptoms.  Nonetheless, these records do not contradict the ALJ's finding that Plaintiff's symptoms began to improve with treatment following Dr. Stone's September 2013 opinion, nor do they cast doubt on that finding.  Similar to Dr. Stone's December 2013 treatment notes, these new records show positive responses to treatment after September and support the ALJ's finding of improvement and her decision to discount Dr. Stone's opinion as "not reflect[ive] of the claimant's mental status for a period of 12 continuous months." (Tr. 30).  For the same reasons, the Court finds substantial evidence supports the ALJ's decision to afford little weight to Dr. Stone's opinion and the ultimate finding that Plaintiff was not disabled.

V.   **CONCLUSION**

For the reasons given above, **IT IS ORDERED** that the decision of the Commissioner be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on March 17, 2017.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**